Ready for arguments in the case of Kerr v. Hickenlooper. Good morning, Your Honor. May it please the Court, David Skaggs appearing on behalf of the appellant plaintiffs in this case. In its last decision in this case, this Court held that the individual legislators lacked standing because the alleged injury that we complained of went to the entire legislature as an institution. The Court concluded that that was a necessary interpretation of the Supreme Court's reasoning in the Arizona Redistricting Commission case. The plaintiffs now before the Court, eight boards of education, a county commission, meet that requirement for an institutional governmental plaintiff. Each of these plaintiffs is an entire institution, and each has suffered direct injury. Now that we've addressed that problem, the state has sort of shifted its grounds and raised the issue of standing under the political subdivision doctrine, or because our plaintiffs are allegedly not within the zone of interests entitled to protection. But this Court made very clear in the Branson decision that political subdivisions do have standing to challenge the state to enforce a structural, as opposed to an individual, right granted under a state-enabling act. Do we even proceed to that question, that in prudential standing, if we have Article III standing? Under 12b-1, this is 12b-1 motion? The district court found Article III standing, and the Governor Defendant Appellee has conceded that point in its briefing before this Court, yes, Your Honor. And isn't that enough? Excellent question, Your Honor. It sort of depends on whether or not one reads Lexmark as putting to rest the rest of the prudential standing jurisprudence. To be careful. How do you read it? Say again? How do you read it? Well, we read it to be careful about not forfeiting our ability to argue, I think successfully, that even if Lexmark has not completely done away with prudential standing, we meet what is the applicable part of that, the zone of interests test in this case. Didn't you argue a full, all three prongs of the prudential standing doctrine in your opening brief as if Lexmark never happened? Well, we are taking our cue, Your Honor, from the district court's treatment of our case below, in which it assumed that we still needed to address these issues. So we did. Well, I mean, that can be a problem, you know, because, I mean, you're stuck with that. I mean, if Lexmark doesn't, if Lexmark altered the terrain, as you at some point in your brief acknowledged, then making an argument full-throated under the Lexmark rubric, doesn't that create a problem of waiver? I'm sorry, Your Honor? Waiver. Doesn't it create a problem when you argue under one rubric and that rubric doesn't apply? Admittedly, Your Honor, we were being cautious in deciding that we had best addressed the regular prudential standing rubrics. We think we successfully addressed each of them and that we can proceed to the enabling, to the political subdivision standing question that was raised in particular under the Hugo decision of this court. I guess my question is that if the Lexmark altered the terrain as to what is prudential standing, then isn't it incumbent upon one to take a position, well, you can do whatever alternative you want, but don't you have to say what you think Lexmark means and argue under that rubric, too? And what we think Lexmark means, Your Honor, is that the zone of interest analysis, the statutory interpretation analysis that Justice Scalia reserved in the Lexmark opinion is the one we need to address and we have. So is that all that remains of prudential standing? Is that your view, then? Well, certainly the academic reviews of Lexmark suggest that there is the third prong remaining for whatever it's worth. I don't think it's really pertinent in this case. That is a question of third-party standing. We don't think that that's a problem for us, but at least the ---- Are those merits questions or jurisdictional questions? We are here under a 12b-1 jurisdictional motion. I understand. Why are we talking about these other things if they aren't merits? But getting to zone of interests certainly can easily elide into consideration of things that would arise on the merits. We don't need to get there under our treatment of the zone of interests jurisprudence, and in particular the rulings of the Supreme Court and this Court on what standards need to be met to fall within the zone of interests requirement. So your view is that that is still an issue we need to address. Under a 12b-1 jurisdictional straight-up analysis, we still need to talk about zone of interest. Begging your pardon, Your Honor, we are being careful not to finesse an issue that was presented to the Court. We need to know what your position is, and we need for you to speak directly to the law as it stands today. Our position is that the Article III standing finding of the district court and conceded by the government, by the defendant in this case, ought to suffice to get us to the merits of the case. And how could that be? I mean, we've got the political subdivision standing. That's a doctrine. I mean, you can't walk away from that. That is this. And question, Your Honor, whether or not the treatment of prudential standing in Lexmark also encompasses something like the political subdivision doctrine. I didn't say anything about political subdivision doctrine in Lexmark. I mean, that's a pretty strong leap to me, it seems. Only to the extent that the broad implications of Lexmark call into question the sort of subsidiary standing doctrines. In any case, we are happy to address the political subdivision doctrine issue, and if we proceed to do so. Yes. And if I may ask a question about that, the district court went to great lengths in its brief, I mean, to go point by point on the relevant paragraphs that you had identified below as providing a basis for political subdivision standing. I was left scratching my head that in your opening brief, you made no attempt to address that point by point particularized analysis. You cited the exact same paragraphs that the court had talked about in its order below without saying why the court got it wrong and saying that those were not sufficient to provide political subdivision standing. Unless I missed something and I read it pretty closely, why isn't that a problem? I mean, the court says, look, these are the paragraphs, these paragraphs are insufficient. You say we have political subdivision standing. You cite the same paragraphs. You don't explain why the court got it wrong. The court got it wrong, in our opinion, Your Honor, because it misinterpreted the critical distinction between Branson and Hugo. Hugo dealt with, as the court knows, an allegation of the deprivation of individual rights in the analytic approach stated in Branson, individual rights under the alleged violation of the so-called Dormant Commerce Clause. Branson was very specific in saying if you're dealing with the structural rights under statute, in our case under the Enabling Act, enforceable through the Supremacy Clause, that is sufficient standing for a governmental entity to sue its, quote, parent state. Okay. I understand that point. But you have to stand and fall based upon what's in your complaint, right? I beg your pardon, Your Honor? You have to stand or fall based upon what's in your complaint, do you not? Yes, indeed. And if you're in your complaint, there are certain allegations that are supposedly providing a basis for an argument of political subdivision standing. The court below says I've looked at every one of the paragraphs that you cite, and they're insufficient to plead facts that would give you political subdivision standing. And then on appeal, you don't address any of that. I mean, I'm saying if the district court says A and you don't say not A above, what are we left with? In our briefing, Your Honor, I believe below and before this court, we have laid out the relationship that our plaintiffs bear to the State of Colorado and their special constitutional standing, both under federal and state constitutions. That the court below found it inadequate doesn't mean that we didn't make those allegations. And in our complaint, we lay out the relationship that our plaintiffs have with the State of Colorado, in particular the requirements of the state constitution that our school board plaintiffs have a joint responsibility to raise the revenue with the state necessary to implement the constitution's mandate for a uniform system of public education in the state. As it relates to your distinction, Branson, Hugo, what I don't understand is just because if I understand it correctly, the distinction you're drawing is between individual rights and structural rights. Isn't there still a question of whether the enactment, the entity actually provides, confers benefits on you as opposed to others more generally? I mean, it seems to me that that really is a significant question here as it relates to the Enabling Act, whether there can be any suggestion that that's doing anything for you, which was not the case in Branson. Your Honor, if I can acknowledge that we have to get under Branson to its own form of a zone of interest analysis, that is whether our plaintiffs are properly the beneficiaries of rights and protections under the Enabling Act. They are. And let me explain why I reached that conclusion. Counties and school districts existed in the state of Colorado before statehood. The Enabling Act itself recognized and respects the responsibilities that counties and school districts had at the outset, before statehood, to deal with the responsibilities in particular of public education, but also county jurisdictional issues. It was the counties that determined who would be representatives under the Enabling Act to the original state constitutional convention. They have been invested since before statehood with the interests that we allege should be protected under Branson, and that Hugo is inapposite to this case. In any event, the standard that ought to apply to this concern stated in the Patrick case by the Supreme Court, by this court in the American humanist case, and in Say Streets, is a very liberal standard. It is, you know, is the zone of interest such that the plaintiff's interests are not so marginally related or inconsistent with the purposes implicit in the statute? Here, the Enabling Act, rather than being implicit, is very explicit about the need to maintain a republican form of government. In Say Streets, the standard was, is it plausibly related to the statute that is at issue? And in Bennett v. Speer, is it arguably related? I would point the court, if I may, to the rationale in the Supreme Court decision in Clinton v. New York, which arose under the line-item veto case and was brought by the city of New York that had been injured by the exercise of a line-item veto. Nowhere in the analysis of standing in that case was the court concerned with whether or not the city of New York had a particular interest being protected by the presentment clause of the Constitution or the separation of powers doctrine. It was sufficient that they had been injured by the line-item veto and that there had been a violation of the Constitution's prevention, provisions which they sought to take advantage of. With permission, may I reserve the balance of my time for rebuttal? Good morning. Good morning. Thank you, Judge Briscoe, and may it please the court, Fred Yarger, Solicitor General, on behalf of the Governor of Colorado. This case has presented a number of difficult issues over the past seven years, but as it comes to this court,  there are only two basic questions. First is the forfeiture and waiver of various arguments the plaintiffs are attempting to make in favor of reversal of the district court's opinion, and second is whether the new plaintiffs to this case, which were added after remand to political subdivisions, have standing to sue. Both of those issues are independently dispositive and sufficient to affirm the district court. I'd like to address each of them in turn if I could. On the question of forfeiture and waiver, page 22 of the district court's order is very clear. It holds that plaintiffs forfeited any argument under the zone of interests and generalized grievance prongs of standing. Now, plaintiffs didn't even mention that forfeiture in their opening brief, nor did they argue plain error. Under this court's clear precedent, that marks, quote, the end of the road for this litigation under cases like Richeson, which is a 2011 decision of this court. Now, in their reply brief, for the very first time ever in this stage of the case, plaintiffs make a new argument, which is that we were not entitled to raise certain prudential grounds in a 12b1 motion to dismiss. Now, again, those arguments were not made below. They were not made in the opening brief. They were not made in the amicus brief in support of the opening brief. The term 12b1 shows up for the first time in the reply brief in front of this court. So I don't think that is an excuse for plaintiffs not arguing. Kagan. Well, wouldn't we look at the scope of the 12b1 and what is at issue in a 12b1? Wouldn't that be our responsibility to determine that? Whether they raise it or not? What rule 12 requires is that you assert certain threshold arguments at the outset. Rule 12g says you can combine any combination of arguments available under rule 12 into a single motion. What the district court ordered us to do below, before we filed our motion to dismiss, was file a brief, a motion, only on the issue of standing. Now, since day one in this case, since 2011, we have argued Article III standing. We have argued prudential standing. The political subdivision standing issue is new because political subdivisions joined this case for the first time after remand in 2016. So that was the first time that those arguments were available to the governor. So what we did, relying on the district court's order, is file a rule 12 motion raising all of the arguments we had on the standing issues in this case, as the district court required us. And plaintiffs in response, and this is page, I think it's 16 of their brief in opposition, that's appendix page 1489, simply said that they weren't under any obligation to address the zone of interest or the generalized grievance test. That's why the district court, page 22 of its order, said those issues are forfeited. And that's why, when they fail to argue plain error in their opening brief, those issues are waived and this court is under no obligation or duty to reach those issues. And that marks the end of the road. Now, plaintiffs, during their argument to this court, have done some confusion about the zone of interest test and the political subdivision test. I want to make clear that those are two separate arguments, two separate threshold requirements that a plaintiff must satisfy to sue. Plaintiffs waived the zone of interest test entirely. The political subdivision test is certainly a live issue. They have preserved that argument. Well, isn't the zone of interest test arguably within Article III standing analysis? I think so. Lexar did introduce some confusion about where the zone of interest test sits. Well, what I will say is plaintiffs say over and over this is no longer a prudential question. This court in American Humanist Association, that's a 2017 case cited in the brief, called the zone of interest test a question of prudential standing, or at least said that that is the way it is labeled in some cases. The United States Supreme Court in Bank of America versus City of Miami said, even after Lexmark, we hold that plaintiffs satisfy the zone of interest, quote, in quotation marks, prudential standing test. So whatever you call it and however you classify it, simply labeling it prudential doesn't mean that plaintiffs are under no obligation to answer an argument that was clearly raised in the Rule 12 motion before the district court. I don't think Lexmark gives them the out that they think they seek to assert in this case. Do you accept the premise that the political subdivisions are substantially independent from the State of Colorado? We haven't made an argument there or not. We agree that they are substantially independent. All right. They fail the political subdivision standing doctrine for a very simple reason. That is because the only federal statute that they've identified, Section 4 of the guarantee, And what City of Hugo said is that in order for a federal or a political subdivision to come into federal court and sue its creating state, it has to identify a statute enacted by Congress that specifically provides rights to municipalities. They haven't done so. What they have done is point to other provisions of the Enabling Act. The provisions that create the school land trust in the State of Colorado, which we don't dispute, are enforceable by political subdivisions in appropriate cases. But what this Court's decisions hold, going all the way back to Ka Tribe Housing Authority in 1991, is that political subdivision standing isn't based on an act as a whole. It's based on a specific provision that a political subdivision is attempting to enforce. So in that case, it was Section 3604 of the Federal Housing Act. And what the housing authority of the Ka Tribe had to allege is that they were, quote, genuinely injured by conduct that violated its rights under that section of the Fair Housing Act. That's at page 1193 of that opinion. So that's what we're arguing in terms of the political subdivision doctrine. They simply haven't met that threshold requirement that City of Hugo imposes on political subdivisions. Now, the other line of argument that plaintiffs are making under the political subdivision doctrine is that they somehow have inherent rights to raise taxes and that these rights, under other provisions of the State Constitution, get them within the standing rubric of City of Hugo. But that's not the inquiry. The inquiry is whether Federal law and a specific Federal statute grants them those rights. And that's why this court or, excuse me, United States Supreme Court held that, at least as a Federal law matter, municipalities have no, quote, inherent right of self-government. That's the Williams case dating back all the way to 1933. And specifically in the guarantee clause and Republican form of government context, the Sixth Circuit in the Phillips case said it would be, quote, or, excuse me, for plaintiffs to sue to obtain guarantee clause rights from municipalities, which I think is essentially what plaintiffs are attempting to argue in this case. So the basic message that we have for the court this morning is that there are two perfectly sufficient and independent grounds for the court to affirm the district court's order. First, waiver and forfeiture. Those issues were dispositive. The district court held that, and that was an alternative ground for dismissal. And second, the political subdivision doctrine under City of Hugo. Under the waiver and forfeiture line, does that do away with any potential to make a prudential standing argument? Because I'm not clear what their prudential standing argument is, and I'm not clear, therefore, what your response to it is. Your Honor, I share the confusion. And I think one of plaintiffs' strategies in this case has been to obfuscate things a little bit. This is what I will say. Zone of interest test the Supreme Court held in Lexmark might not be described as a matter of Article III standing. But what it is and remains is a threshold ground that is validly raised in a motion to dismiss, which is exactly what we did in response to the district court's order. We followed its order to a tee. This Court and the Supreme Court continue to label that question a question of prudential standing. I don't think there's any argument that we weren't entitled to raise it at the threshold. I think there's no argument, no valid argument, that plaintiffs had the right to ignore those issues in its opposition to our motion to dismiss. And that is an independent issue that requires dismissal. And when you say the Supreme Court is calling it part of prudential standing, you're again looking at Lexmark to get to that point? No, I'm looking at Bank of America versus City of Miami. Now, it was dicta and what it said is we find that plaintiffs satisfy the zone of interest test and in a parenthetical phrase they say or, quote, for prudential standing. And so to the extent that it is a part of the prudential standing rubric, the fact that, as you would allege, they forfeited and waived it, that would defeat any potential prudential standing argument. And then the only one that would be standing would be to be addressed would be the question of political subdivision standing. No, Judge Holmes, what I'm saying is that they have to meet the zone of interest test even to get into court here. If they forfeit arguments on that and then waive those arguments in their opening brief, the case is concluded. How is the zone of interest any different than Article III standing? Well, the zone of interest test is a question of looking at the statute or constitutional provision, looking at the language and perhaps the legislative history and trying to determine who is protected by that constitutional provision or that statute. I think the Article III inquiry, sort of in its narrowest, is injury in fact, causation, and regressibility. So zone of interest, however you classify it as prudential jurisdiction. Those sound close. Don't they sound close? They sound close, but after Lexmark and this Court's holdings in American Humanist Association, however you classify them, it's an independent requirement to get into court and plaintiff's haven't satisfied that here. I'm sorry. Now I'm confused because if you're saying it's an independent requirement, I mean, if it is under the prudential standing rubric, prudential means just that, prudential. That means that that's after you've gone past Article III standing. And so it wouldn't be a threshold requirement. Article III standing is a threshold requirement. So I'm not clear what you're getting at. I understand your concern, Judge Holmes. What the Supreme Court and this Court has held is that when presented with various threshold arguments, including Article III and prudential standing, a court may choose among them in disposing of a case. So that was Vergas. That's a decision of the United States Supreme Court. And Wilderness Society. Before Lexmark. Before? Were those cases before Lexmark? They were, but I don't think they changed the inquiry. I get your point about choosing between threshold arguments, but I guess what I'm saying is at least what seemed logical to me is what you have is essentially three different potential arguments. You have the Article III standing, which, as I understand it, you're not contesting. I didn't hear you respond to it when you said you waived it. Okay. Right? That's correct. We're not contesting injuring, back causation, or addressability. Okay. So you've got Article III standing, then you've got a prudential standing argument. And if that prudential standing argument includes a zone of interest test, then I understood your position to be they waived that, therefore they lose there. Yes. Okay. And then the last thing we're talking about is political subdivision standing and what happens there. That's correct, Your Honor. All I'm saying is that zone of interest is independent grounds for dismissal. Okay. And, Judge Briscoe, I can give you a post-Lexmark cite from this Court that decides to dismiss a case on prudential standing without reaching Article III standing. That's the V.R. acquisitions case. It's a Tenth Circuit case from 2017. I thought it flat out said that prudential standing is gone. Lexmark? V.C.R. V.R. acquisitions. V.R. Excuse me. V.R. acquisitions versus Wasatch County. No. It did not hold that prudential standing is gone. It said that it consisted with the United States Supreme Court's arguments. It can put to one side Article III concerns and dismiss a case on prudential grounds. I think the question there was third-party standing, which I think even plaintiffs agree is a prudential standing question. Well, I won't read it to you. What's that? I said I won't read it to you. Do you have other arguments? Your Honor, if there are no further questions. Okay. Thank you. First, Your Honors, to the question of waiver, the fact that the district court didn't like our arguments with regard to prudential standing doesn't mean we didn't make  them. They are reiterated in pages two through eight of our reply brief, which refer to our briefing in the district court. Two through eight of your reply brief? Well, how does that help you? I mean, if you don't talk about it in your opening brief and the district court said you forfeited it, that's a problem. I mean, you know, the district court says these arguments don't have a right to be heard. You file your opening brief and you are silent on that question. It seems to me you're done. I beg your pardon, Your Honor. I'm sorry. Our opening brief did address. Well, you referred to your reply brief. Which the reference includes references back to our opening brief. I was trying to be succinct. I beg your pardon, Your Honor. Hugo itself explains the issue before us, I think, and I quote, in the event structural  relationship between the states and the private market, which was at issue in that case. We also would make the point that looking at the sort of the jurisprudence behind the political subdivision doctrine, going back to the Williams decision and the Trenton decision, which counsel referred to, both of those addressed situations unlike ours in which there had been a later created entity within the state of New Jersey, in particular in the Trenton case. So the metaphor there of the parent state made some sense. In our situation, our counties and school districts do have an independent existence separate and prior to the state's existence, and that gives us, I think, a very different jurisdictional posture than it was the case in New Jersey. If anything, our plaintiffs are more like cousins or sisters to the state than it is a parent-child relationship. Even if that's true, aren't you relying upon Federal law to support your claim? And if you are, doesn't that mean that Federal law has to give you something? I mean, even if that's right, even if you existed before the state, you had rights before the state, what difference does that make? Your Honor, I will fall back on Justice Scalia's admonition in Lexmark, and that has to do with the Court's, quote, unflagging obligation to decide cases. I think we have met the standards for the zone of interest test as well as the political subdivision test, and it is – it remains for us to get to the merits. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments this morning. This case is submitted.